Mr. Swann then moved to quash a fieri facias issued by Manning, the administrator of Catlett, because Manning died after the award of execution.

THE COURT refused to quash it. (FITZHUGH, Circuit Judge, contra.)

## Case No. 2,516.

### CATLETT et ux. v. FAIRFAX.

[2 Cranch. C. C. 99.] [1]

Circuit Court, District of Columbia. April Term, 1814.

EQUITY PRACTICE—ENFORCING DECREE AGAINST EXECUTOR.

In Alexandria, an execution de bonis propriis, is the proper process against an executor, upon a decree in equity for the balance of his administration account.

This was a motion to quash an execution against the defendant, de bonis propriis, on a decree in equity against him as executor of the will of Lord Fairfax, for the balance due upon the settlement of his administration account, to the plaintiff's wife, daughter of the testator.

E. J. Lee, for the plaintiff, stated that the execution in this form was according to the practice in the court of chancery in Virginia, and produced a certificate, to that effect, from Mr. Henning, the register of that court.

Motion overruled. (THRUSTON, Circuit Judge, absent.)

## Case No. 2,517.

### CATLETT et al. v. PACIFIC INS. CO.

[1 Paine, 594.] [2]

Circuit Court, D. New York. Oct. Term, 1826.

CIRCUIT COURTS — JURISDICTION — CITIZENSHIP — PLEADING AND PROOF— RESIDENCE TO ACQUIRE RIGHT TO SUE—EVIDENCE — SHIP'S REGISTER— RECORD OF CONDEMNATION—MARINE INSURANCE — THE POLICY — CONSTRUCTION — EXTRINSIC PROOF—JOINT AND SEVERAL INTERESTS—WAIVER OF ABANDONMENT.

1. The averment of the citizenship of the parties, to give jurisdiction to a circuit court, is a necessary averment, and must be proved under the general issue. It is not necessary that a citizen, removing from a territory of the United States, or a state, into another state, should acquire all the rights of a citizen of the state into which he removes, by the laws of such state. It is sufficient if he acquire a domicil there. Yet the declaration must aver that he is a citizen of the state: not sufficient to aver that he is a resident. Difficulty in understanding the term citizen, as used in the constitution.

[Cited in Burnham v. Rangeley, Case No. 2,-176; Prentiss v. Brennan, Id. 11,385; Smith v. Atlantic Mut. F. Ins. Co., Id. 13,-005.]

2. If one make such removal with the avowed object of acquiring a right to sue in the circuit courts, but with the intention of a permanent residence, and not to return, it is not a fraud upon the law.

[Cited in The Garland, 16 Fed. 288.]

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Elijah Paine, Jr., Esq.]

3. The register of a vessel is the only document which need be on board during a period of universal peace, in compliance with the warranty of national character.

4. It is the original register which is required by law to be transmitted, on the loss of a vessel, to the register of the treasury to be cancelled: And as it is the practice not to destroy the register after it is cancelled, it is a document required by law to be deposited in the register's office; and a duly certified copy is legal evidence.

[Cited in The Missouri, Case No. 9,653.]

5. The record of condemnation of a vessel, in a court of vice-admiralty, is not evidence per se. The seal does not prove itself, but must be proved by a witness who knows it: or the handwriting of the judge or clerk must be proved: or that it is an examined copy. The certificate of the American consul is not sufficient to authenticate it.

6. The testimony of the captain, that a survey was held on the vessel, and that the surveyors reported that she could not be repaired but at too great an expense, and that she was thereupon condemned on his application; although not evidence of these proceedings, was held to be evidence that he coincided with the surveyors in opinion.

7. An averment that the plaintiffs have an entire interest in themselves in the subject insured, cannot be supported by evidence of a joint interest with others.

[Cited in Howard Fire Ins. Co. v. Chase, 5 Wall. (72 U. S.) 511.]

8. Nor can an averment of a joint interest with others, be supported by proof of a sole interest.

9. The plaintiffs purchased, separately, each a moiety of the cargo, which was specie, and instructed their agent to get it insured on their joint account. The agent effected the insurance, but the policy was expressed to be on account of owners: afterwards, one of the plaintiffs transferred half his share to the person who was to go in the vessel as supercargo. Held, that the term "owners," was descriptive of the persons intended to be insured, and referring to matters out of the policy, was open to explanation by extrinsic proof.

10. As the underwriters understood, when they made the insurance, that it was on account of the plaintiffs only, it was held, that they could not set up that the supercargo became an owner before the commencement of the risk.

11. The bill of lading, on its face, and the other papers, showed that the interest of the three owners, after shipment, was joint: but there was an endorsement on the bill of lading, stating that one half the cargo was the property of one of the plaintiffs, and the other half, the property of the other plaintiff and the supercargo: Held, that the endorsement was intended only to show the extent of each owner's interest; and that the separate purchase of the cargo, together with the endorsement, did not prove that their interests were several.

12. Before the end of the voyage, it was broken up, and the insured abandoned on learning the fact. The instructions to the master and supercargo, showed that the rights and duties of the latter, as supercargo, were not to commence until the end of the voyage. On the loss of the voyage, the master delivered the specie to the agent of the supercargo, and it was invested in cotton. Held, that as the supercargo was not interested in the policy, his acts did not bind the other joint owners; and that his capacity of supercargo suspended whatever powers he might have had as a partner, and that the investment by him of the specie,